OPINION BY
JOYCE, J.:
¶ 1 T.B. (Appellant) appeals the order entered June 21, 2004, which denied her visitation with the minor child, A.M. We reverse- and remand with instructions. The factual and procedural history have been thoroughly set forth in this Court’s previous decision, T.B. v. L.R.M., 753 A.2d 873 (Pa.Super.2000) (en banc) and by the Supreme Court, T.B. v. L.R.M., 567 Pa. 222, 786 A.2d 913 (2001). Accordingly, we shall only present a brief recitation of the events precipitating this litigation.
¶ 2 Appellant and L.R.M. (Appellee) were involved in a long term, committed, lesbian relationship. They decided that they wanted a child. Thus, Appellee was artificially inseminated, and A.M. was conceived and born. Both women acted as parents to the child until their relationship ended when A.M. was three years old. Thereafter, Appellee refused to allow Appellant to see A.M., which prompted the filing of a custody complaint. Appellant prevailed in achieving in loco parentis standing to seek custody/visitation, visitation was deemed to be in A.M.’s best interest, and a visitation schedule was implemented. However, Appellee filed an appeal, and a stay of the visitation order was granted by order of this Court.
¶ 3 On appeal, this Court affirmed the trial court’s finding that Appellant had standing by virtue of her in loco parentis status. However, we noted that the record was devoid of any evidence, other than the bond between Appellant and A.M., that would factor into the best interest of the child analysis. T.B. v. L.R.M., 753 A.2d at 890. We found that the trial court erred in relying solely on the psychological bond evidence to satisfy Appellant’s burden relative to A.M.’s best interest. Accordingly, we remanded the case “for an in-depth inquiry into the best interest of the child.... ” Id. at 891. The Supreme Court, which only heard the standing issue, affirmed. T.B. v. L.R.M., 567 Pa. 222, 786 A.2d 913 (2001). Thus, the case was remanded to the trial court.
¶4 Upon remand, an evidentiary hearing was held and the hearing officer concluded that it was in the child’s best interest to have visitation with Appellant. In so deciding, a sole conclusion of law was made: “the Hearing Officer concludes following all the testimony, and review of [the] transcripts and briefs that it would be in the best interest of this child to have another loving person in her life.” Report of the Hearing Officer, Docket Entry # 85, *37 at 2-3.[1] No other factors were cited as support for the best interest of the child analysis.
¶ 5 Appellee filed exceptions to the hearing officer’s recommended order. The trial court heard argument on the exceptions on May 26, 2004. The trial court reviewed the entire record, including the transcripts for the hearings held in front of the hearing officer.[2] The trial court also reviewed a psychological report created by Dr. Mark King, who was appointed by the hearing officer to conduct psychological evaluations of Appellant, Appellee and A.M. After reviewing the record, the trial court found that “[Appellant] is certainly fit to exercise partial custody of the child for the purpose of visitation.” Id. at 6. The trial court also determined that Appel-lee, through “carefully calculated efforts, successfully alienated the child against [Appellant].” Id. at 8. Nonetheless, the trial court concluded:
[B]ecause of [Appellee’s] persistent attitude and conduct, I can envision nothing but emotional and psychological turmoil for the child if visits were to be forced, even in a “therapeutic setting,” as recommended by the hearing officer. [Ap-pellee] would, I believe, continue her efforts to thwart visitation if visitation were to be ordered. I am convinced that she would continue her course of degrading [Appellant] to the child and that her anger towards [Appellant] would probably blind her to the psychological damage her conduct might cause to her daughter. My concern for the child’s psychological well-being will not permit me to order visits. I believe it would be to the child’s benefit to have a relationship with [Appellant], but only if [Appellee] discontinued her efforts to thwart that relationship, which will obviously not happen.
Id. at 6. Accordingly, the visitation order was vacated, and Appellant appealed.
¶ 6 Although she presents her issues in three statements of questions involved, the central issue is whether the trial court erred and abused its discretion in denying Appellant visitation. Our standard of review is as follows:
An appellate court’s standard of review of [a] custody order is of the broadest type, and:
the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court’s incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court’s factual findings; and thus, represent a gross abuse of discretion.
Liebner v. Simcox, 834 A.2d 606, 609 (Pa.Super.2003) quoting MacDonald v. Quaglia, 442 Pa.Super. 149, 658 A.2d 1343, 1345-46 (1995). “The standard of review of a visitation order is the same as that for a custody order.” Id. (citation omitted).
¶ 7 Appellant’s main contention is that the trial court relied on an imper *38 missible factor when granting Appellee’s exceptions to the hearing officer’s recommendation and in denying Appellant visitation. Specifically, Appellant argues that the trial court abused its discretion when determining that denying visitation was in A.M.’s best interest because of the “emotional and psychological turmoil” Appellee would subject her to due to the animosity that Appellee harbors towards Appellant.[3] We agree.
¶ 8 “It is well-established in Pennsylvania that custody and visitation matters are to be decided on the basis of the judicially determined ‘best interests of the child’ standard, on a case-by-case basis, considering all factors which legitimately have an effect upon the child’s physical, intellectual, moral, and spiritual well-being.” Hicks v. Hicks, 868 A.2d 1245, 1247-48 (Pa.Super.2005) (emphasis added) citing Zummo v. Zummo, 394 Pa.Super. 30, 574 A.2d 1130, 1142 (1990). However,
a custodial parent’s suspicion of or animosity towards another parent or a third party seeking visitation should not alone warrant denial of visitation; otherwise the custodial parent could always effectively deny visitation simply by testifying to suspicion or animosity. Instead of deferring to suspicion or animosity, the hearing judge must try to determine whether there is any basis for these feelings. Stated more broadly, the judge must appraise whether the relationship between the disputing parties has an adverse effect on the child.
Commonwealth ex rel. Williams v. Miller, 254 Pa.Super. 227, 385 A.2d 992, 995 (1978) (emphasis added). See also Plowman v. Plowman, 409 Pa.Super. 143, 597 A.2d 701, 708 (1991) (mother’s refusal to accommodate relationship between father and child alone cannot serve as a basis for deciding custody); Nancy E.M. v. Kenneth D.M., 316 Pa.Super. 351, 462 A.2d 1386, 1388 (1983) (hostilities between the parents are relevant only insofar as they constitute a threat to the child or affect the child’s welfare); Dena Lynn F. v. Harvey H.F., 278 Pa.Super. 95, 419 A.2d 1374, 1377 (1980) (“of particular relevancy in a case which is so steeped in emotion as this, we must inquire only into relevant facts as *39 they affect the relationship between parent and child not parent and parent or parent and stranger to that intimate relationship”).[4]
¶ 9 Clearly, despite finding that Appellant “is fit to exercise custody of the child for the purpose of visitation” and that “it would be to the child’s benefit to have a relationship with [Appellant]” it was Ap-pellee’s anger towards Appellant that controlled the outcome of the trial court’s decision. This factor alone is not a basis upon which to deny visitation. Only where there is evidence that the relationship adversely affects the child should this factor be considered. Even then, it is only one of several factors that constitute a full analysis of a child’s best interest.
¶ 10 We note that the record is devoid of any evidence of the adverse effect the relationship between Appellant and Appellee is having upon A.M. The court merely speculated that there would be continuing conflict and that A.M. would be “damaged” by the negativity. However, it must be remembered that every custody dispute, by its very definition, is embroiled with strong emotions. Many involve recalcitrant parents who would go to any lengths to prevent the other party from having contact "with the child. In some cases, a parent who puts his or her own feelings before that of a child will denigrate or berate the other party to the child and make efforts to sabotage the other party’s relationship with the child. In those situations, it is the function of the court to rein in the offending party. This can be accomplished through a court order directing the parties to speak neutrally of each other and to not impede the relationship the child has with the other party. See Fernald v. Fernald, 224 Pa.Super. 93, 302 A.2d 470, 471 (1973) (directing mother to cease efforts to prevent visitation and communication and to require her children to attend visitation with their father). If the parent is non-eompliant with the order, this may be a factor to consider in modifying the custody order. Clapper v. Harvey, 716 A.2d 1271, 1275 (Pa.Super.1998). What the court is not to do, however, is to endorse such behavior by basing an order denying custody or visitation solely on the animosity felt by one party towards the other and the alienation that resulted from it, especially in the absence of evidence that the child is negatively affected.[5]
¶ 11 Moreover, the application of these principles is logical in a best interest of the *40 child analysis. Here, Appellant and A.M. had a loving and bonded relationship where Appellant was viewed by A.M. in a parental role. The record evidences that much of Appellee’s motivation to shield A.M. from Appellant was due to Appellant’s philandering. While it is human nature to want to punish one who has violated a trust, in reality it is not in a child’s best interest to have the offending party estranged from his or her life.
¶ 12 In sum, we find that the trial court only relied on one factor in denying Appellant visitation — Appellee’s’ animosity towards Appellant and the possible ramification the negative feelings might have on A.M. There is no evidence that the child in fact will suffer from this one-sided stance. Additionally, the trial court is empowered with options to deter the embittered party from infecting the child. No other factors were considered to determine whether it would be in A.M.’s best interest to have Appellant in her life for periods of visitation. Therefore, we find that the trial court abused its discretion in denying Appellant visitation based upon a best interest of the child analysis that was premised on an impermissible factor unsupported by evidence.
¶ 13 Unfortunately, this does not end the inquiry. The reliance on an impermissible factor has rendered the trial court’s best interest of the child analysis invalid. The hearing officer engaged in no analysis whatsoever. Consequently, this Court is in possession of a record replete with evidence, but devoid of any viable findings of facts, a best interest of the child analysis, or conclusions of law. Much as we would like to reach a decision as to whether it would be in A.M.’s best interests to visit Appellant so to bring this matter to its conclusion, we as an appellate court are unable to do so. It is well established that we are without authority to make credibility determinations and the findings of fact necessary to the requisite analysis. Consequently, we are constrained to remand this matter once again to the Court of Common Pleas of Cambria County to analyze whether it is in A.M.’s best interests to have visitation with Appellant. Alfred v. Braxton, 442 Pa.Super. 381, 659 A.2d 1040, 1042 (1995) (“when an opinion in an child custody matter does not contain an analysis of the record and specific reasons for the court’s ultimate decision, the appellate court must remand to the trial court.”). Additionally, pursuant to Cambria County’s local rule 1915.1(b), the trial court shall exercise its discretion to hear the matter itself instead of appointing a hearing officer.
¶ 14 Turning to a separate matter, on July 29, 2004, Appellant filed for relief from the prior stay that was ordered by this Court in 1997. The stay was ordered when Appellee took her original appeal from the in loco parentis finding and visitation order. We denied Appellee’s current application for relief without prejudice to raise the matter again in her appellate brief. Appellant has, in fact, raised the issue once more. Appellant’s brief, at 32, n. 3. Upon reviewing the record, we find that many of the reasons proffered in support of the stay are no longer valid. Particularly, Appellee’s averment that the trial court’s grant of in loco parentis standing would not likely prevail on the merits on appeal has been disproved. Appellant has been deemed to have in loco parentis standing by this Court sitting en banc as well as our Supreme Court. Moreover, Appellant twice has been granted visitation of the child by the court of first instance, once in 1997, and then again in 2004. Yet, she has yet to see the child in eight years, save for the one visit to Dr. King’s office. Additionally, A.M. is eleven years old now, not a child of the tender age of four that *41 she was at the time the petition stay was granted. Due to her maturing, many of the concerns that precipitated the stay are no longer viable, especially since the visit between A.M. and Appellant in Dr. King’s office went surprisingly well, given that A.M. had no memory of Appellant. Lastly, we recognize the unfortunate delay in bringing this matter to its resolution was created in part by the internal mechanisms of the court system. Because of the necessity of the remand, and the potential for another appeal, this matter will continue unresolved for an indeterminate amount of time and we deem it correct to lift the stay. Accordingly, we order that the stay be lifted and that Appellant is granted visitation with A.M. The visits shall initially occur in a structured, therapeutic setting and at intervals deemed appropriate by the trial court. The visitation schedule shall be graduating, starting out slowly so to acclimate A.M. to this relationship. Appellee shall be cooperative with the visitation schedule and shall not engage in behavior that will negatively impact upon the visitation between A.M. and Appellant. It is ordered.
¶ 15 The order of the trial court denying Appellant visitation with A.M. is reversed. The case is remanded with direction that a thorough analysis of the best interest of the child shall be conducted. The stay of the visitation order entered in 1997 is lifted and a visitation schedule is to be implemented. Jurisdiction is relinquished.
¶ 16 TAMILIA, J., joins and files a Concurring Opinion.

. The only other "conclusion of law’’ states that the child is not a stranger to Appellant and sets forth a proposed visitation schedule.

. The trial court also noted that "the hearing officer's report is obviously deficient.” Trial court opinion, 6/21/04, at 2. We agree with this assertion.

. We note that the trial court's conclusion was partly premised on the psychological report generated by Dr. King, who opined that visitation was not in A.M.’s best interest. His opinion'was based on two factors: 1) by virtue of the lapse of time and A.M.’s young age when she last saw Appellant, that A.M. would in essence be striking up a relationship with a stranger; and 2) that A.M. would be put in ' the middle of the conflict between the parties. See Report of Dr. King, Docket Entry 84, Exhibit D, at 10. Dr. King also opined he was loathe to reward Appellee for her alienation tactics. Thus, Dr. King offered no conclusion to the court as to whether Appellant should be allowed visitation, as he astutely determined that the issues involved were not psychological, but legal and social.
Initially, we note that, while psychiatric considerations may very well be important, they must not be made determinative, for in deciding upon a child’s best interest the court must take many factors into account. In re Donna W., 325 Pa.Super. 39, 472 A.2d 635, 644 (1984). This is so because often times "psychiatry and the law are not co-extensive.” Id. citing Commonwealth ex rel. Grimes v. Yack, 289 Pa.Super. 495, 433 A.2d 1363 (1981).
This case presents a prime example of how psychiatry and the law are not co-extensive. As to the first basis for the opinion, long periods of separation that result in estrangement do not prejudice a petition for visitation when caused by alienation or other factors beyond the control of the person in loco par-entis. Bresnock v. Bresnock, 346 Pa.Super. 563, 500 A.2d 91, 95 (1985); In re James John M., 333 Pa.Super. 417, 482 A.2d 637, 640-641 (1984) The second basis of the opinion is also not legally cognizable, as discussed infra. Thus, reliance on Dr. King’s "opinions” is misplaced; although they are relevant in some contexts, they are unsupported by law.

. We are cognizant of our Supreme Court's decision in Commonwealth ex rel. Zaffarano v. Genaro, 500 Pa. 256, 455 A.2d 1180 (1983). There, the mutual animosity between the maternal grandparents and the father was found to be a sufficient basis, upon which to deny custody. However, in Bucci v. Bucci, 351 Pa.Super. 457, 506 A.2d 438 (1986), Zaffara-no was distinguished because the ill feelings were only one-sided. We find that Bucci is more akin than Zaffarano since, like Bucci, the animosity in this case is one-sided on the part of Appellee and Appellant has never been found to harbor negative feelings towards Ap-pellee.

. Imagine a scenario where the same premise is applied to spouses. It is inconceivable that an embittered spouse who successfully estranges the children from the other spouse, to the point where the other spouse is unknown to the children,, should be rewarded by a determination that it shall be in the best interest of the children not to have any relationship at all with the alienated spouse because of the custodial spouse’s feelings. The pre-posterousness of this scenario is equally applicable to the case at bar, despite Appellant's non-traditional status. Appellant has, after all, been deemed to have standing to pursue visitation or custody by virtue of her in loco parentis relationship with A.M. and the rights of persons standing in loco parentis are "exactly the same as between parent and child." Liebner, supra, 834 A.2d at 609 (citation omitted).